685 So.2d 400 (1996)
Raiford GRANGER, Plaintiff-Appellee,
v.
NELSON LOGGING, et al., Defendants-Appellants.
No. 96-223.
Court of Appeal of Louisiana, Third Circuit.
December 4, 1996.
*401 Michael Lawrence Mullin, New Orleans, for Raiford Granger.
Donald J. Anzelmo, Monroe, for Nelson Logging, et al.
Before KNOLL, THIBODEAUX and DECUIR, JJ.
KNOLL, Judge.
Plaintiff, Raiford Granger, lost his left leg and the use of his left arm in a logging accident that occurred on September 30, 1991. On September 29, 1992, plaintiff filed this worker's compensation claim for disability benefits and medical expenses. Plaintiff's immediate employer, Billy Nelson d/b/a Nelson Logging, and an alleged statutory employer, C & M Pulpwood, Inc., were made defendants.

FACTS
Raiford Granger worked as a truck driver and sawhand for Billy Nelson d/b/a Nelson Logging. C & M Pulpwood, Inc. was a pulpwood broker, and at the time of plaintiff's accident, C & M had contracted to supply pulpwood to International Paper. C & M had no employees of its own engaged in cutting timber, and in order to fulfill its contractual obligations, C & M regularly employed two logging contractors, Ray Smith Logging and Joe Smith Logging. C & M had directed its contractors to cut pulpwood from the "Rifle Point Tract," which was owned by International Paper, and to deliver the timber to International Paper's plant. The tree cutters were directed by C & M as to the type, size, and quantity of trees to cut.
C & M's regular contractors had been working on the Rifle Point Tract for several days when Billy Nelson asked if he too could cut trees for C & M on the Rifle Point Tract. Although Nelson Logging was not one of C & M's regular contractors, Billy Nelson had cut and hauled pulpwood for C & M in the past. Mr. Jake Morris, C & M's manager, authorized Nelson Logging to cut pulpwood from the Rifle Point Tract and deliver it to International Paper under C & M's agreement with International Paper.
On September 30, 1991, Raiford Granger was cutting pulpwood as part of Nelson Logging's crew on the Rifle Point Tract. He was struck by a tree that had been felled by another Nelson Logging employee. Mr. Granger sustained severe injuries to his left arm and left leg. Despite the performance of numerous surgeries in an attempt to save the leg, it was eventually amputated above the knee. A rod was inserted into his left arm, and the record reflects that plaintiff has only limited use of his left arm.
Mr. Granger has been unable to work since the date of the accident, and he has incurred nearly $80,000 in medical expenses. Mr. Granger never received worker's compensation benefits or reimbursement for medical expenses arising from the accident. His direct employer, Billy Nelson d/b/a Nelson Logging has since gone bankrupt. Mr. Granger did draw Social Security disability payments, and some of his medical bills have been paid by the State of Mississippi under Medicare.
On September 29, 1992, Mr. Granger filed a disputed claim for worker's compensation against his employer, Billy Nelson d/b/a/ Nelson Logging. Mr. Granger also alleged that C & M was liable as his statutory employer. Mr. Granger later amended his petition to assert a claim for penalties and attorney's fees against C & M. After a hearing on August 18, 1995, the hearing officer rendered judgment in favor of the plaintiff, finding that Mr. Granger was C & M's statutory employee, and that he was totally and permanently disabled. The hearing officer awarded disability benefits from the date of the accident, but did not award medical expenses, since she found that they had been already paid by Medicare. The hearing officer *402 also denied Mr. Granger's request for penalties and attorney's fees.
Initially, C & M appealed the hearing officer's determination that a statutory employment relationship existed and her finding that Mr. Granger is totally and permanently disabled.[1] Plaintiff appeals the hearing officer's failure to award full medical expenses and her failure to award attorney's fees and penalties.

TOTAL AND PERMANENT DISABILITY
C & M assigns as error the hearing officer's finding that Mr. Granger is totally and permanently disabled. C & M argues that the record is abundantly clear that Mr. Granger is capable of employment, based on his own statements and the report of his treating physician, Dr. Robert T. Van Uden, Jr.
La.R.S. 23:1221(2)(c) provides that compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is unable to engage in employment of any kind.
Disability can be proved by both lay and medical testimony. The hearing officer should weigh all evidence, medical and lay, in order to determine whether or not the worker has met his burden. Simpson v. S.S. Kresge Co., 389 So.2d 65 (La.1980). Whether or not Mr. Granger is totally and permanently disabled is a question of fact. The hearing officer's findings on this issue should be given great weight, and should not be overturned on appeal unless clearly wrong. Johnson v. Ins. Co. of No. America, 454 So.2d 1113 (La.1984).
The record reflects that Mr. Granger sustained severe injuries to his left arm and left leg. He sustained a fracture of the humerus and a compound fracture to his lower left leg. Despite several surgeries in an attempt to save his leg, he developed a severe gangrenous infection that required disarticulation of his left leg at the knee. Mr. Granger suffered complications following the amputation, and eventually the procedure was performed again, this time above the knee. Mr. Granger is presently unable to use a prosthetic leg because of soreness and leaking in his stump. A rod was placed in Mr. Granger's left arm following the accident. Although the rod has since been removed, Mr. Granger suffers from severe weakness in his left arm, and has difficulty in grasping even a cup of coffee.
Mr. Granger has a fourth grade education, and he can read and write. He is 56 years of age and has held jobs as a laborer, truck driver, and sawyer. He has been unable to engage in gainful employment since the date of the accident. Mr. Granger stated that he wanted to return to work as a truck driver, but that he was unable to obtain a commercial driver's licence due to his disability. Mr. Granger speculated that he would like to work as a dispatcher for a trucking company if there were a position available.
Mr. Granger's treating physician, Dr. Robert J. Van Uden, Jr., an orthopedic surgeon in Natchez, stated that he felt that Mr. Granger would not be able to return to work in the logging industry. Nevertheless, he stated that it was possible that Mr. Granger could be retrained for some less vigorous activity, although he knew of no existing positions that he could fill.
Mr. Granger's disability was evaluated by Advanced Chiropractic Group of Longview, Texas, prior to trial, and their report placed Mr. Granger's whole person disability at 66%. This disability was felt to be permanent. The report concluded that alternative careers in the competitive job market were an unreal expectation, and that Mr. Granger was totally and permanently disabled. This report was uncontroverted.
Considering the record as a whole, we cannot say that the hearing officer erred in finding Mr. Granger totally and permanently disabled. The record reflects that Mr. Granger's devastating injuries have had a profound effect on his ability to perform even the simplest tasks. Mr. Granger and Dr. Van Uden's hopes that Mr. Granger could be *403 retrained for an alternate career are simply too speculative to rebut the overwhelming evidence of disability. Despite the strict burden of proof imposed on claimants in proving permanent total disability, the hearing officer's findings were reasonable considering the record evidence.

MEDICAL EXPENSES EXTINGUISHED
The hearing officer found that all of Mr. Granger's medical expenses had been paid by Medicare, and declined to award any past medical expenses. Mr. Granger appeals, asserting that the hearing officer erred in finding all bills were paid by Medicare, since the record evidence reflects that only $42,540.00 of Mr. Granger's $79,510.11 medical expenses had been paid by Medicare.
Under La.R.S. 23:1212, employers and insurers are entitled to offset for medical expenses that are paid by third parties. La. R.S. 23:1212 became effective on January 1, 1990, and it states:
Payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, of medical expenses that are owed under this Chapter shall extinguish the claim against the employer or insurer for those medical expenses. This Section shall not be regarded as a violation of R.S. 23:1163. If the employee or the employee's spouse actually pay premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums.
We have serious doubts as to whether it was the intention of the legislature to have payments by Medicare extinguish the obligation of the employer to pay medical expenses under worker's compensation. The statute's operation in the case sub judice undermines the basic principle of worker's compensation law, namely, that persons who enjoy the benefit of an employee's labor should be the ones to bear the cost of injuries incident to that labor. As a result of the application of La.R.S. 23:1212 to the instant case, the State will ultimately bear much of the burden of Mr. Granger's injuries, while C & M, having enjoyed the benefit of Mr. Granger's labor, will receive a windfall.
Nevertheless, the language of the statute is quite clear. "Payment by any person or entity ... of medical expenses that are owed under this chapter shall extinguish the claim against the employer or insurer for those medical expenses." La.R.S. 23:1212 (emphasis added). We, therefore, are constrained to hold that the payment of $42,540.00 in medical expenses by Medicare extinguished Mr. Granger's claim for those expenses, but only to the amount paid.
The record reflects that $36,970.11 of Mr. Granger's medical expenses were not paid by Medicare. The hearing officer erred in holding that these expenses had also been extinguished, and C & M remains liable for these expenses.

PENALTIES AND ATTORNEY FEES
La.R.S. 23:1201 provides that the first installment of compensation payable for permanent total disability shall become due on the fourteenth day after the employer or insurer has knowledge of the injury or death. Medical benefits are due within sixty days of receipt of written notice. If the employer or insurer fails to make these payments, he becomes liable for statutory penalties and attorney's fees under La.R.S. 23:1201(F).
However, such penalties and attorney's fees shall not apply if the claim is "reasonably controverted." La.R.S. 23:1201(F)(2). Whether a claim is reasonably controverted turns on whether the employer or his insurer had sufficient factual information to reasonably counter the factual information presented by the claimant. Thibodeaux v. L.S. Womack, Inc., 94-1375 (La. App. 3 Cir. 4/5/95), 653 So.2d 123.
Employers should not be penalized for bringing close issues to court. Dupre v. Industrial Garment and Supply of Louisiana, 94-1456 (La.App. 3 Cir. 5/3/95), 657 So.2d 194. Additionally, the question of penalty and attorney's fee assessment is essentially one of fact and the hearing officer's findings should not be disturbed on appeal *404 absent manifest error. McCarty v. State, Office of Risk Management, 94-33 (La.App. 3 Cir. 10/5/94), 643 So.2d 886.
Based on a thorough review of the record, we conclude that the hearing officer committed manifest error in failing to award penalties and attorney's fees. This case typifies the very reason that the statutory employer doctrine was established. Here, an uninsured and undercapitalized contractor was interposed to perform a hazardous service that was the lifeblood of the principal's trade, occupation, and business. The jurisprudence concerning statutory employers in the context of the logging industry is clear and well established, and considering the undisputed facts of the instant case, C & M's liability was never seriously in doubt. See Hart v. Richardson, 272 So.2d 316 (La.1973); Bellard v. Tri-State Insurance Company, 282 So.2d 453 (La.1973); Woodard v. Southern Casualty Insurance Company, 305 So.2d 528 (La.1974); Malone & Johnson, Louisiana Civil Law Treatise, Worker's Compensation § 123, West 1994.
The testimony of Mr. James Morris, C & M's manager, reflects that C & M not only had insufficient facts to reasonably dispute Mr. Granger's claim, but that C & M possessed all the facts indicating that Mr. Granger's claim was valid. The facts concerning the relationship between C & M and Nelson Logging, as related by Mr. Morris, overwhelmingly place C & M as Mr. Granger's statutory employer. See Bowens v. General Motors Corp., 608 So.2d 999 (La.1992); Pitcher v. Hydro-Kem Services, Inc., 551 So.2d 736 (La.App. 1 Cir.), writ denied, 553 So.2d 466 (La.1989).
Considering the horrendous nature of his injuries, the extent of Mr. Granger's disability was not reasonably controverted, either. C & M called no medical or vocational witnesses, and instead based their dispute on the optimistic speculation of Mr. Granger and his treating physician. Although Mr. Granger and Dr. Van Uden hoped that Mr. Granger could return to work one day, those statements were insufficient to reasonably controvert the overwhelming evidence of disability. The difficult burden of proving total and permanent disability notwithstanding, it was simply unreasonable for C & M to refuse to pay benefits or medical expenses to Mr. Granger for a period of nearly five years after the date of the accident. We find Mr. Granger is clearly entitled to statutory penalties and attorney's fees and costs.
Plaintiff counsel submitted a statement indicating that he spent 50 hours on the case sub judice prior to appeal, and requests an award of $7,500. Plaintiff counsel additionally requests reimbursement of costs in the amount of $25.00 paid to Dr. Van Uden.
The factors to be considered in determining the amount of attorney's fees in worker's compensation cases are the degree of skill and ability exercised by the claimant's attorney, the amount of the claim, the amount recovered, and the amount of time devoted to the case. Naquin v. Uniroyal Inc., 405 So.2d 525 (La.1981); Thibodeaux v. L.S. Womack, Inc., supra. Considering that defendant had refused to make any payment whatsoever to plaintiff, and considering the duration of his claim and the extent of claimant's medical expenses, the amount in dispute was a substantial sum in excess of $100,000. We note that defendant disputed both liability and disability until shortly before oral argument on this appeal, and claimant was forced to prove every element of his case. Through his skill and devotion, plaintiff's counsel was able to recover the vast majority of the disputed amount. We find the $7,525 for attorney's fees and costs requested by claimant is very reasonable. Additionally, we award claimant $3,000 for bringing this appeal.
For the foregoing reasons, the judgment of the hearing officer finding claimant totally and permanently disabled is affirmed. The judgment of the hearing officer denying medical benefits and refusing to award penalties and attorney's fees and costs is reversed. The judgment is recast as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment herein rendered in favor of RAIFORD GRANGER and against defendants, C & M Pulpwood, Inc. for medical expenses in the amount of THIRTY-SIX THOUSAND NINE HUNDRED SEVENTY AND 11/100 ($36,970.11) *405 DOLLARS, together with legal interest from the date of judicial demand.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein rendered in favor of RAIFORD GRANGER and against defendants, C & M Pulpwood, Inc. for statutory penalties in the amount of 12% of the total amount of past due disability and medical benefits or $50.00 per calendar day, whichever is greater, not to exceed $2,000.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment herein rendered ordering C & M Pulpwood, Inc. to pay RAIFORD GRANGER the amount of TEN THOUSAND FIVE HUNDRED TWENTY FIVE AND NO/100 ($10,525.00) DOLLARS for the legal fees, together with legal interest from the date of judicial demand.
Costs of this appeal are assessed to defendant, C & M Pulpwood, Inc.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
THIBODEAUX, J., concurs and assigns reasons.
THIBODEAUX, Judge, concurring.
I concur fully in the majority opinion but add these supplemental thoughts concerning the offset pursuant to La.R.S. 23:1212 for medical expenses paid by Medicare. The credit for these expenses is not automatic and self-operative. Rather, they must be pled as a affirmative defense under La.Code Civ.P. art. 1005. Alford v. Acadian Ambulance Service, Inc., 96-639 (La.App. 3 Cir. 11/6/96), 682 So.2d 942; Gentile v. Baton Rouge General Medical Center, 95-0348 (La. App. 1 Cir. 11/9/95), 665 So.2d 422. The answer filed by C & M Pulpwood, Inc. appears to satisfy this requirement, albeit just barely. The answer requests a credit "for social security benefits or other worker's compensation benefits received by or paid to claimant, pursuant to LSA-R.S. 23:1225, other applicable statutes."
NOTES
[1] Prior to oral argument before this Court, C & M conceded liability as claimant's statutory employer. Since C & M abandons this assignment of error on appeal, we will not consider it.